```
       IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA

PERRY ALLEN TRENT,                )
                                  )
              Plaintiff,          )
                                  )
                                  ) Case No. CIV-18-380-RAW-KEW
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
              Defendant.          )
```

**REPORT AND RECOMMENDATION**

Plaintiff Perry Allen Trent (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 48 years old at the time of the ALJ's decision. He has a high school education and worked in the past as a golf course groundskeeper (groundskeeper I) and water department superintendent (water and sewer systems supervisor). Claimant alleges an inability to work beginning on October 10, 2015, due to limitations resulting from neck, back, and leg pain, arthritis, scoliosis, facial reconstruction surgery, and blindness in his left eye.

## Procedural History

On January 11, 2016, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's

3

application was denied initially and upon reconsideration. On September 13, 2017, Administrative Law Judge("ALJ") Jana Kinkade conducted an administrative hearing by video in Dallas, Texas, and Claimant participated in Paris, Texas. On January 8, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on September 25, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work, with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by failing to incorporate all of Claimant's visual limitations in the RFC. Specifically, Claimant contends the ALJ assigned "great weight" to the medical opinion of non-examining state agency physician Dr. William Oehlert, M.D., yet she failed to include visual limitations in the RFC consistent with Dr. Oehlert's findings.

### Evaluation of Claimant's Vision Impairment

In the decision, the ALJ found Claimant suffered from severe

4

impairments of status-post right shoulder injury, degenerative disc disease of the cervical and lumbar spine, remote history of motor vehicle accident with multiple injuries including loss of vision in the left eye, and anxiety. (Tr. 21). She determined Claimant could perform sedentary work with additional limitations:

> [C]laimant has retained the [RFC] to frequently lift and/or carry less than 10 pounds and occasionally up to 10 pounds; sit 6 hours in an 8-hour workday with normal breaks; stand and/or walk 2 hours in an 8-hour workday with normal breaks; and push and/or pull commensurate with lifting limitations except for inability to more than occasionally push and/or pull with his right upper extremity. He has the non-exertional limitations of inability to climb ladders, ropes, or scaffolds; inability to more than occasionally climb ramps or stairs, balance, stoop, kneel, and crouch; inability to crawl; inability to reach overhead more than occasionally with the right upper extremity; inability to reach in all other directions, handle, and finger with the right upper extremity more than frequently; need to avoid exposure to extremes of heat and hazards, including unprotected heights and unguarded moving machinery; inability to more than frequently use near and far visual acuity; inability to more than frequently perform tasks involving depth perception; inability to understand, remember, and carry out complex instructions; and inability to tolerate more than occasional contact with the general public. He has retained the ability to perform detailed tasks in a routine environment, meaning few, if any, workplace changes with the limitation of inability to tolerate more than occasional contact with the general public.

(Tr. 43).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant can perform the representative jobs of table worker, patcher, and bonder, semi-conductor, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr.

5

46-47). As a result, the ALJ concluded that Claimant was not under a disability from October 10, 2015, his alleged onset date, through the date of the decision. (Tr. 47).

Claimant contends that the RFC adopted by the ALJ failed to include all the visual limitations found to exist by Dr. Oehlert, whose opinions the ALJ assigned "great weight." With regard to Claimant's vision, Dr. Oehlert reviewed the record evidence on June 20, 2016, and noted Claimant had a severe impairment for loss of visual efficiency, or visual impairment. He determined Claimant's near acuity, far acuity, depth perception, accommodation, color vision, and field of vision were all limited in the left eye. He noted Claimant's vision in his right eye was normal. (Tr. 27, 98, 101-04).

The ALJ discussed the evidence in the record regarding Claimant's visual impairment in his left eye. The ALJ specifically referenced Dr. Oehlert's finding that Claimant suffered from a medically determinable impairment for a loss of visual efficiency. She also referenced Dr. Oehlert's findings that Claimant, in addition to other physical limitations, had vision limitations including limited acuity, depth perception, accommodation, color vision, and field of vision in his left eye with normal vision in the right eye. However, contrary to Claimant's argument, the ALJ did not assign "great weight" to Dr. Oehlert's findings. Specifically, the ALJ determined Dr. Oehlert's opinions, including

his opinions with regard to Claimant's physical limitations, were entitled to "greater evidentiary weight" than those of state agency physician David M. Bailey, M.D., who had previously reviewed the record on April 7, 2016. The ALJ noted the record was more developed at the time it was reviewed by Dr. Oehlert on June 20, 2016.[2] The ALJ stated in summary that "the [s]tate agency assessments [are] entitled to some, but not full evidentiary weight, and further [found] Dr. Oehlert's opinion to be entitled to more evidentiary weight than Dr. Bailey's initial opinion." She determined the opinion evidence was "entitled to evidentiary weight to the extent consistent with the [RFC] depicted above, for the reasons set forth directly above[.]" (Tr. 42).

Claimant also argues that Dr. Oehlert's findings regarding his vision are inconsistent with the limitations the ALJ adopted in the RFC. Claimant contends that Dr. Oehlert determined Claimant had "limited" acuity, depth perception, color vision, accommodation, and field of vision in the left eye. Claimant asserts this is inconsistent with the ALJ's inclusion in the RFC of his "inability to more than frequently use near and far visual acuity [and] inability to more than frequently perform tasks involving depth perception." However, in *Moore v. Berryhill*, 2018

---

[2] Dr. Oehlert's findings regarding Claimant's vision in his left eye are the same as those reached by Dr. Bailey when he reviewed the record evidence on April 7, 2016. (Tr. 87-90).

WL 2375697 (W.D. Okla. May 24, 2018) (unpublished opinion), the court discussed Claimant's argument regarding the use of the term "limited" and that it was not inconsistent with the use of the term "frequent" in the RFC. The court noted that "frequent" is defined "as occurring 'from one-third to two-thirds of the time', meaning that Plaintiff could engage in the visual activities described in the RFC somewhere between one-third and two-thirds of the workday." *Id*. at *3, quoting Soc. Sec. Rul. 83-10, 1983 WL 31251, at *6. The court further noted that the assessment of "limited" with regard to vision "signifies" the presence of "a severe visual impairment, but is not intended to indicate what degree of functional limitation [such] visual impairments would impose in a work setting." *Id*. at *3; *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *6 (nonexertional capacity for a claimant's visual abilities "must be expressed in terms of work-related functions.").

   Here, the ALJ did not rely entirely on Dr. Oehlert's findings regarding Claimant's vision and did not assign them "great weight." The ALJ relied upon other evidence in the record when assessing the RFC. She noted that both Dr. Oehlert's opinion and the assessment of Claimant's treating doctor, Imran Plumb, M.D., supported that Claimant suffered visual limitations secondary to the loss of vision in his left eye from a 1987 motor vehicle accident. She also stated that the record demonstrates Claimant

had "no subsequent change in visual acuity" since his accident, Claimant continued to drive and operate "heavy equipment on the job after the accident," *i.e.*, Claimant continued to work after his accident with his loss of vision in the left eye, and "that although [Claimant] contends he no longer drives, he reported he was driving in his Function Report." (Tr. 42). *See Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008) (noting ALJ's credibility determination was affirmatively linked to substantial evidence in the record when he noted that the record did not indicate a worsening of the claimant's impairment and that the claimant previously worked with the impairment suggesting it did not currently prevent the claimant from working). The ALJ further relied on Claimant's report that "he prepared simple meals daily; did the laundry, did minor cleaning; drove; shopped in stores weekly for 30 to 60 minutes at a time; managed money; watched television daily; fished once or twice a month; occasionally watched children play sports and visited others once or twice every 2 weeks." (Tr. 40). *See Moore*, 2018 WL 2375697, at *3 (finding it appropriate for the ALJ to consider subjective allegations, activities of daily living, and treatment history when evaluating a vision impairment).

Claimant further asserts that the ALJ did not account for Dr. Oehlert's "limited" impairments in the RFC for accommodation, color vision, and field of vision. However, any such failure is

9

harmless as the patcher job identified by the VE in response to the hypothetical question posed by the ALJ, Dictionary of Occupational Titles, 723.687-010, 1991 WL 679524 (4th rev. ed. 1991), is not precluded by "limited" vision limitations in those areas. Accommodation, color vision, and field of vision are not activities required by the patcher job. *See*, *e.g.*, *Kirkpatrick v. Colvin*, 663 Fed. Appx. 646, 649-50 (10th Cir. 2016) (finding error harmless even if the ALJ failed to account for limitations in depth perception and peripheral vision as such visual limitations were not present in the job).

The record indicates the ALJ considered Claimant's vision when assessing the RFC, and she included limitations in the RFC associated with his vision impairment. Claimant has failed to show that the RFC is unsupported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (affirming denial of benefits when ALJ's decision was supported by substantial evidence and the correct legal standards were applied).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and

Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 6th day of February, 2020.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE